UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kenta Hawkins,

                 Plaintiff,        Case No. 20-cv-10990

v.                                  Judith E. Levy
                                       United States District Judge

Michigan Department of
Corrections,                       Mag. Judge R. Steven Whalen

                 Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION TO PARTIALLY DISMISS THE COMPLAINT [3]**

Before the Court is Defendant Michigan Department of Corrections' (MDOC) motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 3.) Plaintiff Kenta Hawkins worked for Defendant as a correctional officer and shift supervisor. (ECF No. 1, PageID.2.) She sues Defendant for employment discrimination based on her race, national origin, and disability. She also asserts claims of hostile work environment, retaliation, and negligent infliction of mental distress.

For the reasons set forth below, Defendant's motion for partial dismissal is GRANTED IN PART.

I. **Background**

Plaintiff began working for Defendant in August 2002 as a correctional officer. (ECF No. 1, PageID.2.) Defendant promoted Plaintiff to correctional sergeant and shift supervisor in August 2005. (*Id.* at PageID.3.) Plaintiff's duties included supervising other correctional officers and applying departmental guidelines to situations concerning the security of the facility or the safety of prisoners. (*Id.*) From 2017 to 2019, she worked at the Ryan Reentry Center in Detroit, Michigan.

Plaintiff's allegations involve several workplace issues at Ryan Reentry Center (Ryan Reentry). The first issue involves Plaintiff and MDOC Lieutenant Forrest Dotson (Dotson). Plaintiff alleges that Dotson harassed her in the workplace and treated her poorly on the job. (*Id.*) She alleges, for example, that she informed Dotson that she suffers from spinal stenosis, which limits her ability to walk and engage in other physical activity, but that Dotson routinely assigned her to work requiring extensive physical activity, which exacerbated her spinal stenosis. (*Id.* at PageID.4.)

Plaintiff also alleges that Dotson sexually harassed her, which she reported to MDOC Captain Tommy Snipes (Snipes). (*Id.*) In response, on September 6, 2017, Dotson called Plaintiff into his office in the early morning hours during the night shift and addressed her derogatorily, indicating that her complaint would be thrown out. (*Id.*) Dotson allegedly told Plaintiff: (1) "If I told you to suck my d[–] no one would believe you"; (2) "You're a woman, black and old, no one wants your disabled ass here"; and (3) "No one trusts you, you're a liar [and] a thief and I will keep my staff at ready against you, you will not be working here long." (*Id.*)

Later that day, Plaintiff emailed Snipes and asked him to call her to discuss the September 6 incident. (*Id.*) During their call, Plaintiff told Snipes what happened, to which Snipes allegedly responded that there was nothing he could do. (*Id.*) On September 7, 2017, Plaintiff reported the September 6 incident with Dotson in writing to Snipes and to MDOC Deputy Warden Noah Nagy. (*Id.*) Plaintiff indicates that, in March 2018, she was placed "back under the supervision of Lieutenant Dotson," though, she does not indicate what occurred between September 2017 and March 2018 that would have placed her "back" under his supervision. (*Id.*)

Plaintiff alleges that in June 2018, she applied for a work accommodation from Defendant's disability accommodation coordinator, Joanne Bridgford. (*Id*. at PageID.5.) Plaintiff was granted the accommodation through October 1, 2018 and was informed that she should apply for a vacant position that met the needs of her physical disability. (*Id*.) In August 2018, Plaintiff applied for a "sit-down job" (*id*.) at Ryan Reentry. She states that in November 2018, Human Resources employee Lori Fouty informed her that the sit-down position had been filled by someone that Plaintiff believes is not disabled. (*Id*. at PageID.6.)

In October 2018, Plaintiff reported to MDOC management: "continued retaliation, disability discrimination, and sexual harassment" involving Dotson and his partner MDOC Lieutenant James McAllister. (*Id*. at PageID.5.) Plaintiff alleges that Dotson and McAllister: (1) wrote her up on three insubordination charges; and (2) destroyed relevant evidence and video footage that Plaintiff requested be preserved (the content of the evidence and video footage is not specified in the complaint). (*Id*. at PageID.6.)

In January 2019, Plaintiff again sought a disability accommodation and asked to be placed in "several vacant Sergeant positions" or to be

4

transferred to the sit-down job at Ryan Reentry. (*Id.*) She states that Bridgford reviewed her disability request and determined that Plaintiff "could not perform the essential duties of her position" despite noting that Plaintiff's physician indicated that she could perform them. (*Id.*) Bridgford "removed Plaintiff from work" and instructed Fouty "not to allow Plaintiff to return to work." (*Id.*) Two days later, Plaintiff reported to work but was sent home. (*Id.* at PageID.7.) She alleges that Bridgford and others "should have sent her to one of their doctors for medical screening instead of removing her from work." (*Id.*)

Plaintiff states that she first learned that she had been terminated when she was hospitalized on January 28, 2019 for a medical condition. The hospital staff notified her that her medical insurance was inactive as of January 12, 2019, when she "was no longer a state employee." (*Id.*) Then, on February 1, 2019, "Defendant returned Plaintiff back to work so that they could manufacture and charge her with falsification of a medical accommodation form and three charges of Insubordination to cover up the retaliation and disability discrimination." (*Id.*) She alleges that she filed a complaint with the Michigan Department of Civil Rights, and, after Defendant learned of this, it terminated her again on April 11,

5

2019. (*Id.* at PageID.8–9.) Although she does not specifically state that she returned to work or was reinstated after that, Plaintiff alleges that she was "wrongfully discharged for a third time" in June 2019.[1] (*Id.* at PageID.8.)

On April 21, 2020, Plaintiff sued Defendant under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*; the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 *et seq.*; and Michigan common law. (ECF No. 1.) Her complaint asserts the following counts:

- Count One: race discrimination under Title VII and the ELCRA;

---

[1] As noted above, certain portions of Plaintiff's complaint are unclear and difficult to follow. Some of these allegations are not included in this background section. For example, Plaintiff alleges that "[o]n or about May 14, 2018, Plaintiff received a (7) seven day suspension settlement offer for reporting the harassment in which she declined." (ECF No. 1, PageID.5.) There are several different ways to interpret this allegation, and the Court will not guess which interpretation applies. Plaintiff next alleges that "[i]n June 2018, Defendant issued Plaintiff a ten (10) day suspension on record for reporting the harassment via email." (*Id.*) Perhaps this relates to Plaintiff sending an email to Snipes on September 6, 2017 asking to talk to him about the incident with Dotson. But again, that is not clear, because Plaintiff does not allege that she reported any harassment by email. In the very next paragraph of the complaint, Plaintiff alleges that "Appellant" applied for a work accommodation. (*Id.*) There is no "Appellant" identified in this case.

- Count Two: national origin discrimination under Title VII and the ELCRA;

- Count Three: hostile work environment under the ELCRA;

- Count Four: retaliation under Title VII and the ELCRA;

- Count Five: negligent infliction of mental distress under Michigan common law; and

- Count Six: discrimination on account of a disability under the ADA and PWDCRA.

(*Id.*) Plaintiff seeks monetary, injunctive, and equitable relief, including "immediate[]" reinstatement to her to her position by Defendant. (*See id.* at PageID.11–19.)

## II. Legal Standard

When deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### III. Analysis

Defendant seeks dismissal of part of Count One as well as of Counts Two, Five, and Six. Defendant first argues that Plaintiff's Title VII race and national origin discrimination claims (a portion of Counts One and Two) should be dismissed for failure to exhaust her administrative remedies with the Equal Employment Opportunity Commission (EEOC) before filing her lawsuit. (ECF No. 3, PageID.48.) Second, Defendant argues that Plaintiff's national origin discrimination claims under Title VII and the ELCRA (Count Two) should be dismissed because Plaintiff failed to allege in the complaint that her national origin places her in a legally protected class. (*Id.* at PageID.51.) Third, Defendant argues that Plaintiff's negligent infliction of mental distress claim (Count Five)

8

should be dismissed for failure to allege harm to a third person. (*Id.* at PageID.52.) Fourth, Defendant argues that Plaintiff's claims of discrimination on the basis of a disability under the ADA and PWDCRA (Count Six) are barred by sovereign immunity. (*Id.* at PageID.55.)

### A. Failure to Exhaust—Partial Dismissal of Counts One and Two

Defendant argues that Plaintiff's failure to exhaust her race and national origin discrimination claims with the EEOC preclude her from bringing a Title VII claim for discrimination under these legal theories. (*Id.* at PageID.50–51.) "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dept. of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).

Plaintiff filed an EEOC charge on December 16, 2019 with the following claim description:

> I began working for the above-named employer in or about August 2002; I was last employed as a Sergeant.
>
> On 19 March 2019 and 12 August 2019, I filed charges of discrimination against my employer (23A-2019-0505 & 23A-2019-00989). Prior to this, I had made numerous internal

9

> complaints of discrimination due to my sex, race, disability, and age, to no avail. On 14 June 2019, my employment was terminated. I have evidence showing that my termination was discriminatory.
>
> I believe I have been discharged in retaliation having participated in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, Title I of the Americans with Disabilities Act of 1990, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

(ECF No. 3-2, PageID.61.) The EEOC's claim form also contains a section with ten checkboxes, and above them it says: "DISCRIMINATION BASED ON (Check appropriate box(es).)." (*Id.*) Plaintiff checked one box only, for retaliation; all of the other checkboxes, including one for race and another for national origin, are blank. (*Id.*) Plaintiff received a right-to-sue letter, with a determination that, based on its investigation, the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." (*Id.* at PageID.62.)

Plaintiff does not dispute that she only checked the box for retaliation—and not for race or national origin discrimination. And the written description of her charge, set forth above, is based mostly on retaliation. But she also states, "my termination was discriminatory." (*Id.* at PageID.61.) She also mentions as "sex, race, disability, and age,"

10

(*id.*) when describing her discrimination-based termination. Accordingly, her race discrimination claim is "reasonably expected to grow out of the EEOC charge." *Strouss*, 250 F.3d at 342. However, her national origin claim is not included in her description. Accordingly, Plaintiff's claim under Title VII for race discrimination may continue, but her national origin discrimination claim is dismissed.[2]

## B. Failure to Allege National Origin—Dismissal of Count Two

Defendant argues that Plaintiff's national origin discrimination claim must be dismissed because she fails to allege that her national origin places her in a legally protected class. To allege a discrimination claim based national origin under Title VII or the ELCRA, a plaintiff must demonstrate that:

> (1) [she] belongs to a protected class; (2) [she] was subject to unwelcome harassment; (3) the harassment was based on race [or national origin]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant

---

[2] Title VII's exhaustion requirement does not apply to state-law claims under the ELCRA. *See Fuller v. Mich. Dept. of Transp.*, 580 F. App'x 416, 425 (6th Cir. 2014). Accordingly, Plaintiff's ELCRA claim for race discrimination in Count One is not dismissed for this reason. However, Plaintiff's national origin discrimination claims under both Title VII and the ELCRA (Count Two) are dismissed for failure to state a claim, as discussed below.

knew or should have known about the harassment and failed to take action.

*Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017).

Plaintiff's complaint is silent as to her national origin. Accordingly, she has not plead a required element: that she belongs to a protected class. Accordingly, her national origin discrimination claims under Title VII and the ELCRA (which comprise the entirety of Count Two) are dismissed under Rule 12(b)(6).

### C. Failure to Allege Harm to a Third Person—Dismissal of Count Five

Defendant asks the Court to dismiss Plaintiff's claim for negligent infliction of mental distress (Count Five) because Plaintiff does not allege harm to a third person. A claim for negligent infliction of mental distress in Michigan must allege the following elements:

> (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not presence, at least shock "fairly contemporaneous" with the accident.

*Hesse v. Ashland Oil, Inc.*, 466 Mich. 21, 34 (2002).

Plaintiff's complaint alleges that Defendant's actions toward *her* in the course of her employment caused her "severe emotional distress." (ECF No. 1, PageID.16–17.) She makes no allegations regarding any serious injury threatened or inflicted on a person other than herself. Accordingly, Plaintiff's negligent infliction of mental distress claim (Count Five) is dismissed for failure to state a claim.

### D. Sovereign Immunity—Dismissal of Count Six

Defendant moves to dismiss Plaintiff's claims for discrimination on account of a disability in violation of the ADA and PWDCRA (Count Six). These claims are analyzed in turn.

#### 1. ADA Claim

Defendant argues that Plaintiff's ADA claim is barred by immunity supplied in the Eleventh Amendment of the U.S. Constitution. (ECF No. 3, PageID.54–55.) Defendant is correct. Subject to limited exceptions,[3] none of which are applicable here, the Eleventh Amendment bars suits

---

[3] There are three exceptions to Eleventh Amendment immunity: (1) when the state has waived its immunity by consenting to the lawsuit; (2) when Congress has abrogated the state's sovereign immunity; and (3) when the plaintiff seeks only prospective injunctive relief against a state official from violating federal law. *See Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citing cases). As indicated, none is applicable here.

13

"in which [a] State or one of its agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Here, the Michigan Department of Corrections, a department of the State of Michigan, is named as Defendant. Accordingly, Plaintiff's ADA claim is barred by Eleventh Amendment immunity and is dismissed.

### 2. PWDCRA Claim

Defendant argues that Plaintiff's claim under the PWDCRA should also be dismissed because Eleventh Amendment immunity applies. Under the Supreme Court's application of Eleventh Amendment sovereign immunity, "nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). States' constitutional immunity from suit prohibits *all* state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Zarza v. Bd. of Regents of Univ. of Mich.*, No. 18- 13862, 2019 WL 3556707, at *2 (E.D. Mich. Aug. 5, 2019) (emphasis in original) (concluding that the plaintiff's "state law claims under the PWDCRA . . . fail") (*citing Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005)). Defendant is a department of the State

14

of Michigan, and has not consented to suit. (*See* ECF No. 3, PageID.56.) Accordingly, Plaintiff's PWDCRA claim is barred by sovereign immunity and is therefore dismissed.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for partial dismissal (ECF No. 3) is GRANTED IN PART. The following counts in the complaint are dismissed:

- Count One: national origin discrimination under Title VII;
- Count Two: national origin discrimination under Title VII and the ELCRA;
- Count Five: negligent infliction of mental distress under Michigan common law; and
- Count Six: discrimination on account of a disability under the ADA and PWDCRA.

The following counts remain:

- Count One: race discrimination under Title VII and the ELCRA;
- Count Three: hostile work environment under the ELCRA; and
- Count Four: retaliation under Title VII and the ELCRA.

IT IS SO ORDERED.

Dated: March 3, 2021
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 3, 2021.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager