## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Kenta Hawkins,

                    Plaintiff,        Case No. 20-10990

v.                             Judith E. Levy
                                 United States District Judge

Michigan Department of
Corrections,                    Mag. Judge R. Steven Whalen

                    Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT [76], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [50], AND DENYING AS MOOT PLAINTIFF'S EMERGENCY MOTIONS TO DISMISS [65, 66], PLAINTIFF'S MOTION FOR AN ORDER FOR WAIVER OF FEES [69], PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE RESPONSE [74], PLAINTIFF'S MOTION FOR LEAVE TO FILE OPPOSITION MOTION [80], AND PLAINTIFF'S MOTION IN LIMINE [81]

Before the Court are *pro se* Plaintiff Kenta Hawkins' motion to amend her complaint (ECF No. 76) and Defendant Michigan Department of Corrections' ("MDOC") motion for summary judgment. (ECF No. 50.) For the reasons set forth below, Plaintiff's motion to amend is DENIED and Defendant's motion for summary judgment is GRANTED.

Accordingly, Plaintiff's emergency motions to dismiss (ECF Nos. 65, 66), motion for leave to file a late response (ECF No. 74), and motion for leave to file opposition motion and exhibits (ECF No. 80) are DENIED AS MOOT. In addition, Plaintiff's motion for waiver of PACER fees (ECF No. 69) is DENIED AS MOOT. Plaintiff must contact the Clerk of the Court directly to obtain a waiver of PACER fees.

## I.    Background

Plaintiff brought this suit against Defendant alleging race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliot-Larsen Civil Rights Act ("ELCRA"), hostile work environment based on race and sex in violation of ELCRA, and retaliation based on opposition to race and sex discrimination in violation of Title VII and ELCRA. (ECF No. 21.)

Plaintiff is an African American woman (ECF No. 50, PageID.476) who began working for Defendant in 2002 as a correctional officer and later as a correctional sergeant and shift supervisor. (ECF No. 21, PageID.224.) From 2017 to 2019, she worked at the Ryan Reentry Center in Detroit, Michigan. (*Id.* at PageID.224.) Her allegations involve several workplace issues at Ryan Reentry.

2

One issue involves Plaintiff's interactions with Lieutenant Forrest Dotson. (*Id.* at PageID.226.) Plaintiff alleges that after she informed Dotson of her spinal stenosis, Dotson routinely assigned her to work requiring physical activity that exacerbated her spinal stenosis. (*Id.*)

Plaintiff also filed a sexual harassment complaint against Dotson. She alleges that Dotson called her into his office on September 6, 2017, after he learned of the complaint against him. (*Id.* at PageID.226–227.) During that incident, Dotson allegedly told Plaintiff: (1) "If I told you to suck my d[–] no one would believe you"; (2) "You're a woman, black and old, no one wants your disabled ass here"; and (3) "No one trusts you, you're a liar [and] a thief and I will keep my staff at ready against you, you will not be working here long." (*Id.* at PageID.227.)

Plaintiff reported the incident to MDOC Captain Tommy Snipes that day, and Snipes allegedly responded that there was nothing he could do. (*Id.*) On September 7, 2017, Plaintiff reported the September 6 incident with Dotson in writing to Snipes and to MDOC Deputy Warden Noah Nagy. (*Id.*) Plaintiff states that she was placed "back under the supervision of Lieutenant Dotson" in March 2018 but does not indicate

what occurred between September 2017 and March 2018 that would have placed her "back" under his supervision. (*Id*.)

Plaintiff states that on May 14, 2018, she received a seven-day suspension settlement offer for an "alleged work rule violation that occurred seven months prior." (*Id*. at PageID.227.) She adds that "the suspension only occurred after Plaintiff reported the harassment from Dotson," although it is unclear whether she is referring to the report from 2017 or a more recent report. Plaintiff also alleges that Defendant gave her a ten-day suspension "after Plaintiff reported and opposed the harassment from Dotson via email in or around May 2018." (*Id*. at PageID.228.)

In June 2018, Plaintiff applied for a work accommodation from Defendant's disability accommodation coordinator, Joanne Bridgford. (*Id*.) Plaintiff was granted the accommodation for her physical disability through October 1, 2018, and she applied to a "sit-down job" at Ryan Reentry in August 2018. (*Id*.) She states that in November 2018, Human Resources employee Lori Fouty informed her that the sit-down position had been filled by someone that Plaintiff believes is not disabled. (*Id*. at PageID.229.)

4

In October 2018, Plaintiff reported "continued retaliation, disability discrimination, and sexual harassment" to MDOC management. (*Id*. at PageID.228.) Plaintiff alleges that Dotson and his partner MDOC Lieutenant James McAllister "retaliated against Plaintiff and wrote her up on three (3) alleged insubordination charges." (*Id*. at PageID.229.) She also alleges that Defendant "subsequently destroyed evidence and relevant video footage that Plaintiff requested to be preserved," although Plaintiff does not provide details on the content of the evidence and video footage. (*Id*.)

In January 2019, Plaintiff again sought a disability accommodation and asked to be placed in "several vacant Sergeant positions" or to be transferred to the sit-down job at Ryan Reentry. (*Id*.) She states that Defendant terminated her on January 12, 2019, after Bridgford reviewed her disability request and determined that Plaintiff "could not perform the essential duties of her position." (*Id*. at PageID.229–30.)

Then, on February 1, 2019, "Defendant reinstated Plaintiff back to work so that they could manufacture and charge her with falsification of a medical accommodation form and three charges of Insubordination to cover up the retaliation and disability discrimination." (*Id*. at

PageID.231.) She states that she filed a complaint with the Michigan Department of Civil Rights and that Defendant terminated her again on April 11, 2019, after learning of the complaint. (*Id.* at PageID.232.)

Although she does not specifically state that she returned to work or was reinstated after that, Plaintiff alleges that she was "wrongfully discharged for a third time" in June 2019. (*Id.*) Plaintiff states that she "timely filed a Charge of Discrimination on the basis of race, sex, disability, and age" on December 16, 2019, and that the "Civil Service Commission upheld Plaintiff's employment termination and Plaintiff appealed those decisions in state court to no avail." (*Id.* at PageID.232– 233.)

Plaintiff asserts the following ten counts:

- Count 1: race discrimination under Title VII;

- Count 2: race discrimination under ELCRA;

- Count 3: sex discrimination under Title VII;

- Count 4: sex discrimination under ELCRA;

- Count 5: hostile work environment based on race under ELCRA;

- Count 6: hostile work environment based on sex under ELCRA;

- Count 7: retaliation based on opposition to race discrimination under Title VII;

- Count 8: retaliation based on opposition to race discrimination under ELCRA;

- Count 9: retaliation based on opposition to sex discrimination under Title VII;

- Count 10: retaliation based on opposition to sex discrimination under ELCRA.

(*Id.* at PageID.233–245.)

On July 1, 2022, Defendant filed a motion for summary judgment.[1] (ECF No. 50.) In its motion, Defendant first describes Plaintiff's "long disciplinary history with MDOC" starting in 2015. (*Id.* at PageID.477.) This history includes incidents of insubordination, leaving her keys "unattended on her desk during prisoner movement," and "fail[ing] to

---

[1] Defendant did not explicitly mention Plaintiff's ELCRA retaliation claim in its motion for summary judgment. (*See* ECF No. 50.) Defendant indicated at the hearing that it had intended to seek summary judgment as to all of Plaintiff's claims, including her ELCRA retaliation claim. The Court permitted Defendant to submit a supplemental brief to clarify that point by December 5, 2022, with Plaintiff's response brief due on December 29, 2022. On December 1, 2022, Defendant filed its supplemental brief, which clarified that it seeks summary judgment as to all of Plaintiff's claims, including her ELCRA retaliation claim. (ECF No. 68.) Accordingly, the Court construes Defendant's motion as seeking summary judgment for all of Plaintiff's claims.

properly supervise officers, writ[ing] the wrong names in the logbook, and fail[ing] to do pat downs at the gate." (*Id.*) Defendant also states that Plaintiff was issued a suspension for sending an email that "insinuated" Lieutenant Walton only got her job "because she was 'sleeping' with the previous Deputy Warden." (*Id.* at PageID.478.)

Defendant states that it terminated Plaintiff on June 14, 2019 based on "four counts of misconduct": (1) Plaintiff declined to take a prisoner to "healthcare" after he had an adverse reaction to medication, stating that she was unavailable to do so; (2) Plaintiff refused to follow an order to relieve an officer from his post so that he could escort a prisoner to the hospital; (3) Plaintiff told Lieutenant McAlister that she was not going to follow his request to do security checks of cells and cell doors at a given building because that building was not her responsibility and her back hurt; and (4) Plaintiff submitted a falsified medical document, which indicated that her disability did not require her to "be taken off of work." (*Id.* at PageID.479–485.) Defendant notes that any of the three incidents of insubordination "on its own would have resulted in dismissal," and that falsification also calls for discharge. (*Id.* at PageID.482, 485.)

8

On July 22, 2022, Plaintiff filed a response to Defendant's motion. (ECF No. 54.) Defendant filed its reply on August 2, 2022. (ECF No. 58.) On the same day, Plaintiff filed a motion for leave to file supplemental briefing and exhibits opposing Defendant's motion for summary judgment together with a supplemental brief and exhibits. (ECF Nos. 55–57.) The Court granted Plaintiff's motion, opting to consider Plaintiff's supplemental brief and late-filed exhibits in light of her *pro se* status. (ECF No. 64.)

On November 10, 2022, an in-person hearing was held and oral argument was heard on Defendant's motion for summary judgment. On November 16, 2022, Plaintiff filed duplicate emergency motions requesting that the Court transfer her claims to her then-pending state court proceeding. (ECF Nos. 65, 66.) In addition, Plaintiff filed a motion for waiver of PACER fees on December 5, 2022 (ECF No. 69), a motion for leave to file a late response on December 29, 2022. (ECF No. 74.) On January 15, 2023, Plaintiff filed a motion to amend her complaint (ECF No. 76), followed by a motion for leave to file an opposition motion and exhibits on January 18, 2023 (ECF No. 80) and a motion in limine on January 22, 2023. (ECF No. 81.)

## II.   Legal Standard

Leave to amend is to be granted by the Court "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Justice does not require leave to amend in the presence of '[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, [or] futility of amendment.'" *Hillman Power Co., LLC v. On-Site Equip. Maint., Inc.*, No. 1:19-cv-11009, 2022 WL 4553066, at *1 (E.D. Mich. Sept. 29, 2022). "To that end, the decision to grant or to deny leave to amend is 'left to the sound discretion of the trial judge.'" *Id.*

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

10

### III.   Plaintiff's Motion for Leave to Amend Her Complaint

In Plaintiff's motion for leave to amend her complaint, she seeks to replace her complaint "to conform to the evidence on this court record" and to "give defendants and this court a clearer picture on what Plaintiff is litigating." (ECF No. 76, PageID.2196, 2199.) Plaintiff states that there will be no undue prejudice to Defendant because "the exhibits and supplement brief has already been filed and accepted by this court," suggesting that Plaintiff does not seek to include new exhibits or evidence. (*Id.* at PageID.2198.) Her proposed complaint has four counts: "race discrimination in violation of Title VII", "retaliation based on opposition to race discrimination in violation of Title VII", "sexual harassment in violation of Title VII," and "retaliation based on opposition to sexual harassment in violation of Title VII." (ECF No. 76-1, PageID.2216–2222.) For the reasons stated below, Plaintiff's request is denied.

First, Plaintiff has repeatedly failed to cure deficiencies by previous amendments. Plaintiff filed her initial complaint nearly three years ago on April 21, 2020. (ECF No. 1.) On June 3, 2021, the Court granted Plaintiff leave to file an amended complaint, which Plaintiff filed on June

11

10, 2021. (ECF No. 21.) On June 24, 2022, Plaintiff filed a motion to amend her complaint a second time (ECF No. 43), which she then moved to strike on October 23, 2022. (ECF No. 62.) The Court granted Plaintiff's motion to strike, which the Court construed as a motion to withdraw her request to file a second amended complaint. (ECF No. 64.) Plaintiff's present motion is her third request to amend her complaint.[2] Given Plaintiff's past opportunities to amend her complaint, the Court finds that she has repeatedly failed to cure the deficiencies in her complaint.

Second, granting Plaintiff's motion has the potential to cause undue prejudice to Defendant. Discovery ended on June 1, 2022, and Defendant's motion for summary judgment has already been fully briefed and argued. Although Plaintiff indicates that she is not including new exhibits or evidence, her proposed complaint adds new claims and removes others. (ECF No. 76-1, 2216–2222.) Considering a new set of claims at this late stage would prejudice Defendant. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (holding that the district court did not err in denying leave to amend when the motion was

---

[2] The Court also notes that it has given Plaintiff additional opportunities to account for deficiencies by permitting Plaintiff to file late exhibits and supplemental briefs. (*See, e.g.*, ECF Nos. 54–57, 60–61, 64.)

filed four months after the close of discovery and "well after" the motion to dismiss had been "fully briefed.").

Finally, Plaintiff has not provided a reason for her delay, despite her increased burden to justify the timing of her motion. (*See* ECF No. 76.) "Where, as here, 'amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier.'" *Springs v. Mayer Brown LLP*, No. 11-13518, 2013 WL 656465, at *2 (E.D. Mich. Jan. 31, 2013) (quoting *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001)). Thus, the Court denies Plaintiff's third request to amend her complaint.

## IV.   Defendant's Motion for Summary Judgment

### A. Counts 1 and 3: Race and Sex Discrimination Under Title VII

Defendant argues that "[m]any of Plaintiff's allegations are not timely" because she did not bring suit within 90 days after receiving the EEOC right-to-sue letter.[3] (ECF No. 50, PageID.487.) It states that "the

---

[3] Defendant also mentions an EEOC charge and right-to-sue letter from 2017. (ECF No. 50, PageID.488.) Even though Defendant provides Plaintiff's 2017 EEOC charge as an exhibit, it does not appear to be relevant to Plaintiff's allegations in this case. (*See* ECF No. 50-20.) The 2017 EEOC charge covers events that occurred between October 26, 2015, and December 10, 2016. (ECF No. 50-12, PageID.1471.) However, all of Plaintiff's allegations in this case involve workplace issues at the

substance of the 2018 EEOC charge is the same as allegations in her First Amended Complaint in paragraph [sic] 18-28 . . . . As such, any allegation listed in paragraphs 18-28 should be stricken or otherwise foreclosed in relation to this case." (*Id.*) Defendant also notes that Plaintiff's 2020 EEOC charge for retaliation was "the only charge that was timely filed with this lawsuit."[4] (*Id.*) Defendant does not otherwise specify which claims are untimely.

"A Title VII plaintiff must file her employment-discrimination complaint in the district court within 90 days of receiving her right-to-sue letter from the EEOC." *Robinette v. ProMedica Pathology Lab'ys, LLC*, No. 21-3867, 2022 WL 4540192, at *2 (6th Cir. May 9, 2022) (citing 42 U.S.C. § 2000e-5(f)(1); *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 647 (6th Cir. 1998)). "The 90-day filing is not jurisdictional; rather, it is a mandatory claims-processing rule that must be enforced if properly raised by the employer." *Id.* (citing *Truitt*, 148 F.3d at 647; *Kilpatrick v. HCA Hum. Res., LLC*, 838 F. App'x 142, 146 (6th Cir. 2020)).

---

Ryan Reentry Center, which she did not work at until 2017. (See ECF No. 21, PageID.224.)

[4] Neither party provided the Court with a copy of the 2020 EEOC charge or right-to-sue letter.

Plaintiff's 2018 EEOC charge covered events from September 3, 2017, to August 2, 2018, and claimed discrimination based on race, sex, retaliation, age, and disability. (ECF No. 50-8, PageID.1057.) The EEOC issued a right-to-sue letter for this charge on August 23, 2018. (ECF No. 50-8, PageID.1060.) The facts mentioned in the 2018 EEOC charge appear to provide the basis for Plaintiff's Title VII race and sex discrimination claims. As Defendant correctly states, Plaintiff brought the present lawsuit on April 21, 2020, more than ninety days after she received the right-to-sue letter. Because Plaintiff failed to bring her Title VII race and sex discrimination claims within ninety days of receiving the right-to-sue letter, summary judgment is proper as to Counts 1 and 3.

## B. Counts 2 and 4: Race and Sex Discrimination Under ELCRA

In her amended complaint, Plaintiff claims that she would have been treated differently and would not have been fired had she been of a different race or sex. (ECF No. 21, PageID.233–240.)

"Absent direct evidence of discrimination, claims brought pursuant to . . . the Elliot–Larsen Act are subject to the [*McDonnell Douglas*] tripartite burden-shifting framework." *White v. Baxter Healthcare Corp.*,

15

533 F.3d 381, 391 (6th Cir. 2008). When setting forth a prima facie case based upon circumstantial evidence, a plaintiff must show that: (1) they are a member of a protected class; (2) they were subject to an adverse employment action; (3) they were otherwise qualified; and (4) they were treated less favorably than a similarly situated employee outside of the protected class. *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 626 (6th Cir. 2000).

The parties agree that there is no direct evidence of discrimination. (*See* ECF No. 51, PageID.488–489; ECF No. 53, PageID.1582.) The parties also do not dispute that Plaintiff is a member of a protected class as an African American woman or that she was subject to an adverse employment action.

Defendant argues that Plaintiff fails to establish a prima facie case of discrimination because she has not demonstrated that she was treated less favorably than a "non-minority employee with a similar disciplinary history." (ECF No. 50, PageID.491.) Defendant also argues that Plaintiff's termination was not because of discriminatory animus. (*Id.* at PageID.492.) It states that Plaintiff's "multiple instances of insubordination," "disciplinary history," "refus[al] to respond to a medical

emergency," and "falsified medical documents" were the reasons for her termination. (*Id.*)

Plaintiff has not met her burden of proving that she was similarly situated to other employees. "Employees may be considered similarly situated if a plaintiff can prove that all of the relevant aspects of his employment situation are nearly identical to those of the employees who he alleges were treated more favorably." *Campbell v. Hamilton Cnty.*, 23 F. App'x 318, 325 (6th Cir. 2001). "Differences in job title and responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated." *Id.*

Plaintiff has not provided any evidence to support that she was treated differently than someone with similar job title and responsibilities, experience, and disciplinary history. Although Plaintiff makes a number of allegations about her "Caucasian male" co-workers (*see, e.g.*, ECF No. 61, PageID.2063–2064, 2068), she does not provide evidence to support these allegations. Nor does she demonstrate that those individuals had similar job responsibilities, experience, and disciplinary history to her. Thus, Plaintiff has not established a prima

17

facie case of race or sex discrimination under ELCRA. Accordingly, Defendant's motion is granted as to Counts 2 and 4.

### C. Counts 5 and 6: Hostile Work Environment Based on Race and Sex Under ELCRA

Plaintiff alleges that she experienced harassment that interfered with her employment or created an "intimidating, hostile, and offensive work environment." (ECF No. 21, PageID.240–242.) Defendant argues that "Plaintiff's only basis for a hostile work environment claim is alleged derogatory comments made by Lieutenant Dotson in September 2017," which "were not 'severe or pervasive enough'" for Plaintiff to succeed on her hostile work environment claim. (ECF No. 50, PageID.494–495.)

To succeed on a hostile work environment claim under ELCRA, Plaintiff must show

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Betts v. Costco Wholesale Corp.,* 558 F.3d 461, 468 (6th Cir. 2009).

18

In addition, Plaintiff must "present documentary evidence" to demonstrate that "a reasonable person" would find that the conduct was "sufficiently severe or pervasive" to survive a motion for summary judgment. *In re Rodriguez*, 487 F.3d 1001, 1010 (6th Cir. 2007). A Plaintiff can prevail on a hostile work environment claim "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

"Factors to consider in evaluating a hostile environment claim include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 443–44 (6th Cir. 2008) (quoting *Harris*, 510 U.S. at 23).

Plaintiff has not demonstrated that the alleged conduct was "sufficiently severe or pervasive" to succeed on a hostile work environment claim. Plaintiff's hostile work environment claims appear to be based on Dotson's actions and comments. (*See* ECF No. 21, PageID.226–227.)[5] Specifically, Plaintiff describes one occasion where Dotson "told Plaintiff in a derogatory tone, 'If I told you to suck my d[–] no one would believe you.'" and "You're a woman, black and old, no one wants your disabled ass here." (*Id.* at PageID.227.) Yet the Sixth Circuit has held that conduct more severe and pervasive than Dotson's alleged conduct is still not enough to succeed on a hostile work environment claim.

For example,

> a hostile work environment was not shown where, over a two month period, a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house.

---

[5] Although Plaintiff's supplemental brief mentions that Lieutenant Walton repeatedly "started antagonizing, harassing and degrading Hawkins by calling her old," (ECF No. 55, PageID.1795), Plaintiff's hostile work environment claims (and lawsuit) are based on her race and sex—not her age. But even if Plaintiff's claims or lawsuit were brought in relation to her age, Plaintiff fails to provide any evidence that demonstrates this conduct was "sufficiently severe or pervasive" to succeed on a hostile work environment claim.

*Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (describing the facts and holding in *Stacy v. Shoney's Inc.*, No. 97-5393, 1998 WL 165139, at *1–3 (6th Cir. 1998)). Similarly, in *Clark*, the employee alleged that "over a period of two-and-a-half years, [her supervisor] routinely told sexual jokes in front of her, twice placed his vibrating pager against her upper thigh and asked if it 'felt good,' and once grabbed the back of her overalls and tried to look down them." *Howington*, 298 F. App'x at 444 (citing *Clark*, 400 F.3d at 344). Yet this behavior was "not enough to elevate the isolated incidents [of harassment] to an ongoing and pervasive hostile environment." *Id.*

Despite the negative and hostile nature of Dotson's alleged conduct, this isolated incident is not severe or pervasive enough for Plaintiff to succeed on her claim. And Plaintiff has not shown that Dotson's conduct "unreasonably interferes with [her] work performance.'" *Howington*, 298 F. App'x at 443–44. Thus, summary judgment is appropriate as to Counts 5 and 6.

### D. Counts 7, 8, 9, and 10: Retaliation Based on Opposition to Race and Sex Discrimination under Title VII and ELCRA

21

Plaintiff claims Defendant retaliated against her by terminating her employment in response to her complaints alleging discrimination on the basis of race and sex. (ECF No. 21, PageID.242–245.)

"The plaintiff may prove retaliation either through direct evidence or circumstantial evidence." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021). "If the plaintiff relies on circumstantial evidence, her claims are evaluated using the burden-shifting framework of *McDonnell Douglas*." *Id.* "Under *McDonnell Douglas*, if the plaintiff establishes her prima facie case then the burden shifts to the defendant to demonstrate some 'legitimate, nondiscriminatory reason' for its action." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was a mere pretext for discrimination." *Id.*

In order to "establish a prima facie case of retaliation under both Title VII and ELCRA," Plaintiff must demonstrate that "(1) she engaged in protected activity, (2) the defendant was aware of the protected activity, (3) 'the defendant took an action that was "materially adverse" to the plaintiff,' and (4) there is a causal connection between the

22

plaintiff's protected activity and the defendant's adverse action." *Id.* at 343–44.

Defendant argues that Plaintiff has not shown a causal connection between her complaints and the alleged retaliation. (ECF No. 50, PageID.498.) It argues that Plaintiff was fired because of her four incidents of discipline, not because it was retaliating for her complaints about race and sex discrimination. (*Id.*)

Plaintiff has not provided any evidence to support that she was terminated because of her complaints about discrimination. She offers only her own unsupported assertions that Defendant retaliated against her. (*See, e.g.*, ECF No. 53, PageID.1569–72.) These assertions alone are not sufficient to "demonstrate that . . . but-for her protected activity, her employment would have not been terminated." *Jackson*, 999 F.3d at 348–49.

Even if she had provided evidence demonstrating causation, Plaintiff has not shown that Defendant's legitimate, nondiscriminatory reason for her termination—her four incidents of misconduct—was pretextual. To show that Defendant's reason was pretextual, Plaintiff can "refute [Defendant's] legitimate, nondiscriminatory justification by

showing that it '(1) has no basis in fact, (2) did not actually motivate [Defendant's] challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Flowers v. WestRock Servs., Inc.*, 979 F.3d 1127, 1133 (6th Cir. 2020).

Plaintiff does none of the above. Even though she refers to her termination as a "pretext termination," (ECF No. 53, PageID.1565) and disagrees with Defendant's decision to terminate her, she fails to provide any evidence to support that Defendant's reason for her termination had no basis in fact or did not actually motivate Defendant's conduct. Nor does she provide evidence suggesting that her four incidents of misconduct were insufficient to warrant her termination. Thus, summary judgment is appropriate as to Counts 7, 8, 9, and 10. Because summary judgment is proper as to all counts, Defendant's motion for summary judgment is granted.

## V.   Conclusion

For the reasons set forth above, the Court DENIES Plaintiff's motion for leave to amend her complaint (ECF No. 76) and GRANTS Defendant's motion for summary judgment. (ECF No. 50.) Accordingly, Plaintiff's emergency motions to dismiss (ECF Nos. 65, 66), motion for

leave to file a late response (ECF No. 74), motion for leave to file an opposition motion (ECF No. 80), and motion in limine (ECF No. 81) are DENIED AS MOOT. In addition, because the waiver of PACER fees must come directly from the Clerk of the Court, Plaintiff's motion for waiver of fees (ECF No. 69) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: January 24, 2023       s/Judith E. Levy
     Ann Arbor, Michigan      JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2023.

                                 s/William Barkholz
                                 WILLIAM BARKHOLZ
                                 Case Manager